**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL NO. 24-251** |
| | ) | |
| v. | ) | |
| **MONTE BLAIR,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. Introduction

Pending before the court is a "motion to dismiss for sanctions on *Brady* violation based on August 25, 2025 hearing" (ECF No. 79) filed by pro se defendant Monte Blair ("Blair"), with a supplement (ECF No. 86). The government filed an omnibus response (ECF No. 85) in opposition to this motion (and other pretrial motions filed by Blair). The court heard oral argument on October 13, 2026 and took the motion under advisement.[1]

Blair is charged in the indictment (ECF No. 17) with: (1) possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), (b)(1)(B)(vi) and (b)(1)(C); and (5) possession of ammunition by a convicted felon, 18 U.S.C. § 922(g)(1). These items were discovered pursuant to a search of a home at 12 Marycrest Drive, Penn Hills, Pennsylvania, pursuant to a warrant issued by United States Magistrate Judge, on October 16, 2026. Blair resided at the Marycrest home with Jenee Oliver ("Oliver").

The search was authorized in connection with the investigation of Blair's involvement in

[1] The parties are filing proposed findings of fact and conclusions of law with respect to the remaining portion of Blair's *Franks* motion (ECF No. 31). With respect to the *Franks* motion, the court concluded that defendant failed to meet his initial burden for an evidentiary hearing with respect to the search of the home on Marycrest Drive, but ordered an evidentiary hearing with respect to the motion to suppress evidence obtained during the search of Blair's person. The court resolved all other pretrial motions on the record on October 13, 2026.

a shooting two weeks earlier, on October 2, 2024, outside the Penn Hills Convenience Store. It is important to emphasize that, in this federal case, Blair is NOT charged with any crimes related to that shooting. Blair is facing charges in a Pennsylvania state court stemming from that incident.

## II. Discussion

Blair seeks dismissal of the federal charges as a sanction for an alleged *Brady* violation. Blair contends the United States failed to disclose material exculpatory and impeachment evidence, despite assuring the court that *Brady* materials would be immediately disclosed (ECF No. 79 at 1). In the supplement (ECF No. 86), Blair seeks dismissal because the AUSA represented during the August 5, 2025 hearing that there was no *Brady* material. Based on the government's representations at that hearing, the court denied the motion for disclosure of *Brady* material filed by Blair's former counsel (ECF No. 29) as moot (Tr., ECF No. 69 at 2-4).

Specifically, Blair argues that the government was aware of 29-pages of reports from Penn Hills Police detective Michael Lape ("Lape") created during the week of October 2-9, 2024 ("PEP reports") that it did not turn over. Blair argues the PEP reports eliminate probable cause that Blair was the shooter in the October 2, 2024 incident because: (1) Blair was wearing different clothing and was a different height, weight and complexion than the description given by the shooting victim on October 2, 2024; (2) the person identified by the victim from a photo array as the shooter, Shelton Logan, has no connection to Blair, has a criminal history involving firearms, and cannot be eliminated as a suspect; and (3) Lape was dishonest about statements made by Jenee Oliver.

Blair acknowledges that he later obtained the PEP reports through other sources. (ECF

No. 79 at 1). The reports were attached (with Blair's notations) to his motion (ECF No. 79-1 at 11-42). Blair used the PEP reports to cross-examine witnesses during the August 26, 2026 hearing (Tr., ECF No. 111).

The United States argues there was no *Brady* violation because the evidence at issue is not material to the federal charges. The United States points out that Blair is focusing on evidence about the identity of the shooter during the October 2, 2024 incident, which is unrelated to whether Blair possessed cocaine and ammunition at his home on October 16, 2024. In addition, the United States argues that Blair is not prejudiced, because the PEP reports were produced and Blair had a full and fair opportunity to address them in a renewed evidentiary hearing on August 26, 2026 (Tr., ECF No. 111) and at any upcoming trial.[2]

Under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, the prosecution has an affirmative duty to disclose all potentially exculpatory evidence to a defendant "where the evidence is material either to guilt or to punishment." *Id*. at 87. The duty extends to evidence relating to the credibility of witnesses testifying on the government's behalf. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *see United States v. Coles*, 511 F. Supp. 3d 566, 576 (M.D. Pa. 2021) (noting that *Giglio* evidence "is a subset of *Brady* material insofar as it addresses situations in which certain evidence about a witness's credibility or motivation to testify exists"). Prosecutors generally must "learn of any favorable evidence known to the others acting on the government's behalf." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). "[A] *Brady* violation may be found despite a prosecutor's ignorance of impeachment evidence ... when the withheld evidence is under the control of a state instrumentality closely aligned with the prosecution." *United States*

[2] The United States also asks this court to address whether the *Brady* rule applies to pretrial proceedings, an issue on which there is a circuit split (ECF No. 85 at 4-6). The court declines to do so, as it is unnecessary to reach that issue in order to resolve the pending motion.

*v. Risha*, 445 F.3d 298, 306 (3d Cir. 2006) (citation omitted). The government has repeatedly acknowledged its *Brady/Giglio* obligations in this case.

In *Hein v. Feldmeier*, No. 2:25-CV-01140, 2026 WL 886371 (W.D. Pa. Mar. 31, 2026), the court summarized the test to establish a *Brady* violation:

> A *Brady* violation entails three elements. "First, the evidence 'must be favorable to the accused, either because it is exculpatory, or because it is impeaching.'" *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 284 (3d Cir. 2016) (en banc) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "Second, it 'must have been suppressed by the State, either willfully or inadvertently.'" *Id*. at 284-85 (quoting *Strickler,* 527 U.S. at 282). "Third, the evidence must have been material such that prejudice resulted from its suppression." *Id*. (citing *Strickler*, 527 U.S. at 282).

*Id.* at *7 (emphasis added). In this case, the court will focus on the prejudice element because it is dispositive. *United States v. Moreno*, 727 F.3d 255, 262 (3d Cir. 2013) ("*Brady* is not implicated if there is no prejudice to the defendant.").

In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court explained: "the term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called '*Brady* material'—although, strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281; *see Moreno,* 727 F.3d at 262 ("Where the government makes *Brady* evidence available during the course of a trial in such a way that a defendant is able effectively to use it, due process is not violated and *Brady* is not contravened.") (quoting *United States v. Johnson*, 816 F.2d 918, 924 (3d Cir.1987)).

Here, it is undisputed that Blair possesses the PEP reports. Even if the *Brad*y obligation extends to pretrial hearings, the court granted Blair's motion to expand the record and Blair used the PEP reports to cross-examine the prosecution's witnesses at the August 26, 2026 pretrial

evidentiary hearing. In other words, Blair was able to make effective use of the PEP reports during the suppression hearing. Trial is not yet scheduled in this case. In *United States v. Higgs*, 713 F.2d 39 (3d Cir. 1983), the Third Circuit Court of Appeals stated: "No denial of due process occurs if *Brady* material is disclosed to appellees in time for its effective use at trial." *Id*. at 44. It is clear, therefore, that Blair's due process rights were not violated -- even if *Brady* applies to a suppression hearing -- because Blair was not prejudiced.[3]

In sum, the court need not determine whether the PEP reports are favorable to the accused or material because, as discussed above, no prejudice to Blair occurred during the suppression hearing. Under those circumstances, dismissal of the indictment is not an appropriate remedy.

## III. Conclusion

For the reasons set forth above, the motion to dismiss indictment as a sanction for a *Brady* violation (ECF No. 79) will be DENIED. An appropriate order will be entered.

BY THE COURT:

October 28, 2026

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Senior United States District Judge

[3] Dismissal of the indictment would not be an appropriate sanction in any event. *See Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 254-55 (3d Cir. 2005) ("rare sanction" of dismissal with prejudice only appropriate if there is prejudice to defendant and willful government misconduct); *see id.* at 257 n. 10 (3d Cir. 2005) ("In order to find a *Brady* violation in the first place, a court must find that some prejudice ensued to the defendant. *See Strickler v. Greene*, 527 U.S. 263, 281–82 [ ] (1999). Only if a defendant has demonstrated that his rights were violated and that the violation was willful need a court again consider the degree of prejudice in fashioning an appropriate remedy."). In this case, the court cannot find that the government's nondisclosure was willful. There are several considerations that provide a reasonable basis for the government to conclude that the PEP reports are not favorable to the accused or material. For example, the PEP reports relate to whether Blair was involved in the shooting incident on October 2, 2024. Charges relating to the October 2, 2024 shooting incident are pending in state court, not this court. As noted previously, there is a circuit split about whether Brady applies to a suppression hearing and the Third Circuit Court of Appeals has not resolved this issue.